<u>NOT FOR PUBLICATION</u>

<u>UNITED STATES DISTRICT COURT</u>
<u>FOR THE DISTRICT OF NEW JERSEY</u>

_____
                                  :
JOHN G. THOMPSON,                 :
                                  :          Civil Action No.
              Petitioner,         :          09-1770 (FSH)
                                  :
         v.                       :          **O P I N I O N**
                                  :
SCOTT WEBER, et al.,              :
                                  :
              Respondents.        :
_____:

**APPEARANCES:**

> John G. Thompson, Petitioner <u>pro se</u>
> # 343888
> Essex County Correctional Facility
> 354 Doremus Avenue
> Newark, NJ 07105

**Faith S. Hochberg**, District Judge:

On April 9, 2009, Petitioner John G. Thompson ("Petitioner"), a native of Liberia who entered the United States in 2002, filed the instant Petition for a Writ of Habeas Corpus ("Petition"), pursuant to 28 U.S.C. § 2241, challenging his detention by the Department of Homeland Security ("DHS")[1] at the Essex County

---

[1] The Homeland Security Act of 2002, 6 U.S.C. §§ 101-557, P.L. 107-296, 116 Stat. 2135 (Nov. 25, 2002), created the Bureau of Citizenship and Immigration Services ("BCIS") within the Department of Homeland Security. See 6 U.S.C. § 271(a).  The Act transferred the functions of the Commissioner of the Immigration and Naturalization Service ("INS") to the Director of BCIS, <u>see</u> 6 U.S.C. § 271(b), and abolished INS. <u>See</u> 6 U.S.C. § 291. Accordingly, DHS replaced INS on March 1, 2003.

Correctional Facility.  For the reasons set forth below, the Court will deny the Petition.

## BACKGROUND

According to the Petition, Petitioner -- after obtaining permanent residency in the United States -- was convicted on certain charges constituting a removable offense.[2]  See Pet. at 4. Petitioner asserts that "[a]n Immigration Judge ordered [P]etitioner removed[] on September 23, 2008."  See id.  The Petition also states that "Petitioner waived his right to appeal." See id.  Petitioner maintains that, in view of the government's inability to remove Petitioner to Liberia during the six months counted from September 23, 2008, that is, the date of entry of the Immigration Judge's order, Petitioner is now illegally confined.[3] See id. at 4-8. (apparently relying on Zadvydas v. Davis, 533 U.S. 678, 690-701 (2001)).

## JURISDICTION

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied:

---

[2]
The Petition does not specify the charges upon which Petitioner was convicted.  See generally, Pet.

[3]

(1) the petitioner is "in custody,"; and (2) the custody could be "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); see also Maleng v. Cook, 490 U.S. 488, 490 (1989).  This Court has subject matter jurisdiction over the instant Petition under § 2241 because Petitioner is detained within its jurisdiction and he asserts that his detention is not statutorily authorized and violates his constitutional rights.

## STANDARD OF REVIEW

Pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied,  399 U.S. 912 (1970).

## DISCUSSION

I.   APPLICABLE LEGAL REGIME

A.   Removal Period and Its Triggering Events

Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States.  Detention during the removal period under Section 1231(a)(1)(A) is mandatory and, in addition, § 1231(a)(1)(C) provides that the removal period shall be extended, and the alien

may remain in detention during such extended period, if the alien "acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).

The "removal period" starts on the latest of the following: (1) the date when the order of removal becomes administratively final (that is, appeal to Board of Immigration Appeals ("BIA") was either ruled upon by the BIA or the time to appeal to the BIA expired);[4] or (2) if the removal order is judicially reviewed and if a court orders a stay of the removal, the date of the court's final order, or (3) if the alien is detained or confined (except under an immigration process), the date the alien is released from confinement.  See 8 U.S.C. § 1231(a)(1)(B).

B.   **Zadvydas Period**

While, during the 90-day "removal period," the alien must be detained, see id. § 1231(a)(2), after the 90-day removal period, the government may further detain the alien or release him subject to conditions of release.  See id. § 1231(a)(6).  However, in Zadvydas, the Supreme Court held that aliens may be detained further under § 1231(a)(6) only for "a period reasonably necessary to bring about that alien's removal from the United States."  533

---

[4]    The time to appeal an immigration judge's removal decision to the BIA expires thirty days after the entry of the immigration judge's removal order.    See 8 C.F.R. § 1003.38(b).  Hence, an order of removal becomes "final," for the purposes of 8 U.S.C. § 1231(a)(1)(B), *thirty days after* the entry of the immigration judge's removal order, that is, if appeal is not taken.

U.S. at 689 (holding that "the statute, read in light of the Constitution's demands, limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States [and] does not permit indefinite detention"). Recognizing that its holding would lead to difficult judgment calls in the courts, the Supreme Court, "for the sake of uniform administration in the federal courts" recognized a six-month " presumptively reasonable period of detention." Id. at 700-01. However, coining this "presumptively reasonable period of detention," the Supreme Court stressed that,

> [a]fter this 6-month period, o[nly if] the alien provides *good reason to believe* that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. *This 6-month presumption, of course, does not mean that every alien not removed must be released after six months*. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. at 701 (emphasis supplied).

## II. PETITIONER'S CONFINEMENT IS PROPER

Here, Petitioner asserts that his Zadvydas period should be deemed triggered on September 23, 2008, that is the date when Petitioner's Immigration Judge entered the order of removal. See Pet. at 4-6. Apparently adding six months to September 23, 2008, Petitioner seemingly arrives to the date of March 23, 2009,

since he asserts that the government's failure to remove him to Liberia or to release him on March 23, 2009, violated Petitioner's rights.

Petitioner errs. Petitioner's order of removal became "final" *thirty days after* Petitioner's Immigration Judge entered the order, *i.e.*, on October 22, 2008, see 8 U.S.C. § 1231(a)(1)(B); 8 C.F.R. § 1003.38(b). Thus, his presumptive Zadvydas period began to run on October 23, 2008, and reached its six-month point on April 23, 2009, *i.e.*, the date of this Court's issuance of the instant Opinion and the accompanying Order. Moreover, at the time of Petitioner's execution of his Petition, that is, on April 9, 2009, see Docket Entry No. 1, at 8, Petitioner's Zadvydas period was two weeks short even of its presumptive six-month point. Since Petitioner's Zadvydas-based presumptive six-month period did not expire at the time of Petitioner's execution of his Petition (and is still running on the date of this Court's issuance of the instant Opinion and accompanying Order), Petitioner current detention is lawful, and his claims should be dismissed.[5]

---

[5]

If Petitioner is not removed to Liberia after April 23, 2009, Petitioner may file another § 2241 petition. Petitioner, however, should be mindful of the fact that he can shift the burden to the government (that is, obligating the government to show feasibility of Petitioner's removal) *only if Petitioner's next petition states more than his bald conclusion that his removal is not foreseeable*; rather Petitioner would have to demonstrate that "the circumstances of his status" or the existence of "particular barriers to his repatriation" to his country of origin are such that there is no "significant likelihood of removal in the reasonably foreseeable

## CONCLUSION

For the foregoing reasons, the Petition will be denied.

An appropriate Order accompanies this Opinion.


                              s/ Faith S. Hochberg
                              **Faith S. Hochberg**
                              **United States District Judge**

Dated:    April 23, 2009

---

future." <u>Fahim v. Ashcroft</u>, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002).   For instance, Petitioner's claims that he has "been absent from [his] family [and] unable to gainfully work and provide for [his] children," Docket Entry No. 1, at 5, is not an allegation suggesting that there is no significant likelihood of Petitioner's removal to Liberia in the reasonably foreseeable future.